## STATE vs. ANDREW J. FLEETWOOD.

*Criminal Law—Murder—Abortion—Malice—Evidence—Dying Declarations—Verdict—Reasonable Doubt.*

1.  Under an indictment for murder of the second degree, where the death was caused by an abortion, the verdict may be murder of the second degree; manslaughter, assault only, or not guilty. Upon the trial of any person for any felony whatever, (capital cases only excepted), where the crime charged shall include an assault against the person, it shall be lawful for the jury to acquit of the felony, and find a verdict of guilty of assault.

2.  In such a trial the defendant may introduce testimony to contradict the dying declarations of the deceased put in evidence by the State.

3.  Any person who administers a drug, or uses an instrument, with the intent to procure the miscarriage of any pregnant woman, supposed by such person to be pregnant unless the same may be necessary to preserve her life, is engaged in the commission of a felony, and if the death of the pregnant woman results from his act, the law implies malice, and the perpetrator thereof would be guilty of murder of the second degree. And it would be no defense, or mitigation of the crime, that the deceased woman consented to or even solicited him to perform such act.

4.  When a person comes to the conviction that he is about to die, fully apprehends it, and believes in his own mind that death is surely and inevitably approaching, and near at hand, he is in the same practical state as if called on in a court of justice under the sanction of an oath, and his declarations as to the cause of his death are to be considered equal to an oath. But they are nevertheless open to observation, for though the sanction is the same, the opportunity of investigating the truth is very different; and therefore the accused is entitled to every allowance and benefit he may have lost by the absence of the opportunity of more full investigation by the means of cross-examination.

(*October 5*, 1906.)

LORE, C. J., and GRUBB and PENNEWILL, J. J., sitting.

*Robert H. Richards*, Attorney-General, and *Daniel O. Hastings*, Deputy Attorney-General, for the State.

*Robert C. White* and *James A. Marsh* for the defendant.

At a Court of Oyer and Terminer held in Sussex County in October, 1906, the defendant was put on trial upon an indictment for MURDER OF THE SECOND DEGREE, the indictment charging that on the 30th day of January, 1906, at Broad Creek Hundred, Sussex County, the defendant caused and pro-

cured one Flossie Messick to miscarry, abort and bring forth a child, with which she was then and there pregnant, and by him so supposed to be, by the use of a certain instrument then by him used, and that he thereby inflicted upon her injuries of which she died in the City of Philadelphia, on the 8th day of March of the same year.

*Arthur Sellers*, Chief Deputy Coroner of Philadelphia, was produced as a witness by the State to prove certain alleged dying declarations made by Flossie Messick at the Medico-Chircurgical Hospital in Philadelphia, on March 7, 1906, and said witness testified in substance as follows:

When I went to the hospital, I saw a young lady lying in bed there who told me her name was Flossie Messick. She was suffering intense agony, as was apparent to any person who saw her. She made a statement to me, but before doing so her attention was called to her physical condition. Doctor Keene was present at the time, and she was told by him that she could not recover. She was asked whether she knew that she was going to die, and she said that she did and that she wanted to die. She said that she knew she was dying, and she said, "Oh let me die, let me die," and called for the nurse several times and vomited while I was there and threw herself back on the pillow and said she was in terrible agony and pain and that she wanted to die and said "just go away and let me die."

The witness was then asked by the Attorney-General whether Flossie Messick subsequently to her statements as to her realization of impending death made any statement to the witness concerning the cause of her condition, and if so, what was the statement. This was objected to by counsel for defendant on the ground that the State had not shown with sufficient clearness that Flossie Messick realized that she was in a dying condition at the time said statements were made.

Lore, C. J.:—We have no doubt about the admissibility of this testimony. The witness states distinctly that the deceased knew she was dying and wanted to die then.

A.    I asked her where she resided and she told me at Laurel, Delaware. I asked her when she came to Philadelphia and she

said some six or eight months ago; that is, six or eight months before the seventh day of March. I said to her, "Who was responsible for your condition?" and she told me a man by the name of Edward Daly, and that she had been about four months pregnant. She said that she left Philadelphia at the end of January and came to Laurel, Delaware, for the purpose of getting rid of this child; that she came to Laurel about three or four weeks ago and that Dr. Fleetwood of Laurel, Delaware, performed an operation upon her. I asked her where the operation was performed, and she said it was performed in the woods. I asked her where the woods was and she said not far from the home of her grandmother, Lizzie Gibbons. I asked her how it came that she went to Dr. Fleetwood, and she said, "I knew that he was that kind of a doctor." She said, "I saw him passing up the road and I stopped him and asked him whether he would perform the operation, and he said he would. He passed the house and I got in his carriage and we went to the woods. It was in the evening." I said to her, "Did he use instruments upon you?" and she said "Yes." I said, "How do you know that?" and she said, "Because I felt them." I said, "Did you see them?" and she said, "No, I did not; it was too dark. I could not see them." I said, "Then what happened?" She said, "He made me lie upon the ground for some time and then told me that I could get up and go home, and I got up and went to the home of my grandmother, Lizzie Gibbons." I said, "Then what happened?" She said, "A couple of days after that Dr. Fleetwood came to the house and it was the next day after the day that my baby was born that Dr. Fleetwood came to the house." She said that when Dr. Fleetwood came to the house, Lizzie Gibbons, her grandmother, was present. That is all that I recollect of her conversation with me, but that is substantially her statement.

The defendant was produced as a witness in his own behalf and stated that a short time before the sickness and miscarriage of the deceased, she met him on the road near her grandmother's house, told him she was in trouble, and asked him if he would perform an operation upon her, but that he emphatically refused

to do so. The defendant further stated that he was subsequently called in by the grandmother of Flossie Messick to see the latter and found her suffering with labor pains, and that he then said to her, "Flossie, what has brought this on you?"

The Attorney-General objected to the witness' detailing what Flossie Messick said at that time; it not being a dying declaration. White, of counsel for defendant, stated that they would prove by the defendant and other witnesses, statements made by Flossie Messick which were contradictory of her dying declarations put in evidence by the State, namely, that Dr. Fleetwood produced the miscarriage by performing a criminal operation.

· MR. RICHARDS:—I admit that he can do that.

The witness was then allowed to continue as follows: I said "Flossie, what has brought this on you? You are in labor and will have a miscarriage some time to-night." She said, "I have tried several doctors and none would help me, and I have done it myself with a hatpin." Mrs. Gibbons, the girl's grandmother, was present and heard that statement.

(Lizzie Gibbons above referred to was subsequently produced on behalf of the defendant and corroborated Dr. Fleetwood's testimony regarding Flossie Messick's statements as to how the miscarriage was produced).

LORE, C. J., charging the jury.

Gentlemen of the jury:—The defendant, Andrew J. Fleetwood, is charged in the indictment with the crime of murder of the second degree.

It is charged and claimed by the State, that on the thirtieth day of January of the present year, at Broad Creek Hundred in this county, the defendant caused and procured one Flossie Messick to miscarry, abort and bring forth a child, with which she was then and there pregnant, and by him so supposed to be, by the use of a certain instrument then by him used, and that he thereby inflicted upon her injuries of which she died in the City of Philadelphia, on the eighth day of March last.

Under this indictment, if the evidence shall warrant, you may find any one of four verdicts, viz.,—murder of the second degree; manslaughter; assault only; or not guilty.

The character of the offense is such that we deem it unnecessary now, to define and distinguish the different degrees of felonious homicide, and will only say to you that murder of the second degree, the offense charged, is where the killing is with implied malice aforethought.

Under a statute of this State, every person who with the intent to procure the miscarriage of any pregnant woman, supposed by such person to be pregnant, unless the same may be necessary to preserve her life, shall administer to her, advise or prescribe for her, or cause to be taken by her any poison, drug, medicine or other noxious thing, or shall use any instrument, or other means whatever, or shall aid, assist or counsel any person so intending to procure a miscarriage, whether such miscarriage be accomplished or not, shall be guilty of a felony. (*Rev. Code*, 930).

Where, therefore, any person so administers a drug or uses an instrument, contrary to the provisions of the said law, he is engaged in the commission of a felony, and if the death of the pregnant woman results from his act, the law implies malice and the perpetrator thereof would be guilty of murder of the second degree.

Should you be satisfied, therefore, beyond a reasonable doubt, that Andrew J. Fleetwood, the defendant, on or about the thirtieth day of January, 1906,—the date not being material, if the time proved by the State was before the finding of this indictment and within two years next after the commission of the offense—did cause Florence Messick to miscarry, by the use of an instrument as set forth in the indictment, she then and there being pregnant and supposed or known by him to be pregnant, and that she died from injuries received in effecting said miscarriage; you would be relieved of any doubt as to the existence of malice or as to the grade of the crime; because in such case malice is conclusively implied by law, and your verdict should be guilty of murder of the second degree. It would be

no defense or mitigation of the crime that the deceased woman consented to or even solicited him to perform such an operation.

This case lies within a very narrow compass. It is not disputed by the defendant that Flossie Messick had a miscarriage about the time alleged, or that she died some five or six weeks thereafter; but he claims that he did not produce the miscarriage, or that even if he did the death of Flossie Messick did not result therefrom.

You have in evidence in this case, the dying declarations of Flossie Messick. We have been asked by the defendant's counsel to charge as to the degree of credit to be given by you to such declarations. Baron Anderson in *B. R. vs. Ashton*, 2 *Lewin C. C.* 147, cited in 1 *Roscoe's Criminal Evidence*, 8 *Am. Ed.*, 63, lays down this rule: "When a party comes to the conviction, that he is about to die, he is in the same practical state as if called on in a Court of Justice, under the sanction of an oath, and his declarations as to the cause of his death are to be considered equal to an oath, but they are nevertheless open to observation, for though the sanction is the same, the opportunity of investigating the truth is very different, and therefore the accused is entitled to every allowance and benefit he may have lost by the absence of the opportunity of more full investigation by the means of cross-examination."

Our courts in *State vs. Frazer*, 1 *Houst. Cr. Cas.* 186, say: "In such a situation and in view of the death, which he fully apprehends, and believes in his own mind to be surely and inevitably approaching, and near at hand, the conscious solemnity of the occasion, and his duty to speak the truth, and nothing but the truth, is rightly assumed in law to invest his declarations made under such circumstances, with as high a sanction, and as much credibility, as if made under the obligations of an oath duly and formally administered in a court of justice under ordinary circumstances."

To convict of the offense charged in the indictment, indeed of any crime, it is incumbent upon the State to prove every material element of the crime to your satisfaction beyond a reasonable doubt. If there be a reasonable doubt of his guilt, the

accused should be acquitted; for every accused person is presumed to be innocent until he is so proven to be guilty. Such a doubt, however, must be a reasonable one under all the circumstances of the case, and must grow out of the evidence. It must not be a fanciful doubt, a visionary, speculative or sympathetic one, but such a doubt as upon careful and conscientious consideration of all the evidence you feel constrained to entertain.

Governed by the principles of law we have just announced in this charge, it is now your duty carefully and conscientiously to determine the verdict you are to render.

If you believe that Flossie Messick came to her death by reason of the miscarriage caused by Andrew J. Fleetwood, when the same was not necessary to preserve her life, which he procured by the use of an instrument, as set forth in the indictment, she at the time being pregnant and supposed to be so by him, his offense would be murder of the second degree, and you should so find by your verdict.

If you should not so believe, however, but should be satisfied that her death was caused by the unlawful act of the defendant, without malice, your verdict should be manslaughter.

Should you be satisfied from the evidence that he is not guilty of either murder of the second degree or of manslaughter, but that he did unlawfully assault Flossie Messick, your verdict should be guilty of an assault, inasmuch as the law of this State expressly provided, that upon the trial of any person for any felony whatever (capital cases only excepted), where the crime charged shall include an assault against the person, it shall be lawful for the jury to acquit of the felony, and find a verdict of guilty of assault against the person indicted, if the evidence shall warrant such finding. If you believe from the evidence that the defendant, contrary to the statute in that behalf, used an instrument upon Flossie Messick, with intent to procure a miscarriage, she being pregnant and so supposed to be by him, even though her death did not result from such miscarriage, yet such act being unlawful, would constitute an assault in law, and you should so find by your verdict.

This case is one of grave moment, and we commend it to your most careful and conscientious consideration. The crime charged is a heinous one.—one upon which the law of this State has set the brand of infamy. If this defendant has been proven guilty of the crime charged, it is your duty fearlessly and conscientiously so to find by your verdict; but if it be not so proven, it is equally your duty to acquit him.

Verdict, not guilty.